**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RONALD J. MIGYANKO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUTLER HEALTH SYSTEM, INC. d/b/a<br>BHS DERMATOLOGY ASSOCIATES,<br><br>Defendant. | Case No.<br><br><br>**FILED ELECTRONICALLY** |

## CLASS ACTION COMPLAINT

Plaintiff Ronald J. Migyanko ("Plaintiff"), individually and on behalf of all others similarly situated, brings this civil rights class action lawsuit against Butler Health System, Inc., doing business as BHS Dermatology Associates, ("Defendant" or "BHS"), for declaratory and injunctive relief, attorneys' fees, expenses and costs pursuant to Title III of The Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* and its implementing regulations (the "ADA"), and Section 504 of The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* and its implementing regulations (the "Rehab Act"), in connection with BHS's failure to provide and ensure equal access for individuals who use wheelchairs or scooters, averring as follows:

### INTRODUCTION

1.      Despite passage of the ADA nearly thirty years ago, and the Rehab Act nearly fifty years ago, to this date, BHS's facilities are not fully accessible to persons with mobility disabilities who use wheelchairs or scooters.

2.      BHS has discriminated, and continues to discriminate, against Plaintiff, and all others who are similarly situated, by denying full and equal access to, and full and equal enjoyment

of the services, facilities, privileges, advantages and accommodations by failing to provide accessible facilities and failing to remove architectural barriers, where such removal is readily achievable.

3.     BHS has also failed to make reasonable modifications to its policies, practices, and procedures that are necessary to provide its services, facilities, and accommodations to individuals with mobility disabilities. By failing to undertake efforts to ensure that no individual with a disability is excluded, denied services or otherwise provided medical services that are different than those that individuals without disabilities receive, BHS subjects Plaintiff and those similarly situated to discrimination, exclusion, and unequal treatment in violation of the ADA and the Rehab Act.

4.     Specifically, BHS fails to provide accessible examination tables (also called treatment tables or procedure tables) at its BHS Dermatology Associates' facility for patients who use wheelchairs or electric scooters, and BHS relies upon a policy and practice of maintaining such inaccessible examination equipment, requiring patients with mobility disabilities to either remain seated in their wheelchairs to be evaluated by a physician or to undergo humiliating and often dangerous transfer procedures to be physically hoisted from their wheelchair to be placed upon an inaccessible examination table.

5.     BHS's failure to provide accessible examination equipment and its policy and practice of requiring individuals with disabilities to either remain seated for an examination or to undergo transfer procedures to be medically evaluated is discriminatory, is a denial of full and equal access, results in unequal treatment of individuals with mobility disabilities, and is statutorily prohibited by the ADA and the Rehab Act.

6.     BHS will continue discriminating unabated unless and until enjoined as Plaintiff

requests. Accordingly, Plaintiff seeks declaratory and injunctive relief, enjoining BHS from continuing its discriminatory conduct, including an order directing BHS to make readily achievable alterations to its facilities to remove physical barriers to access and make its facilities and services fully accessible to and independently usable by people with disabilities to the extent required by the ADA and the Rehab Act; an order requiring BHS to make all reasonable modifications in policies, practices, or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis; and a declaration determining that BHS's policies and practices of discrimination result in a violation of the ADA, the Rehab Act, and their respective implementing regulations; an award of attorneys' fees, expenses, and costs associated with pursuit of this litigation; and any other such relief that this Court deems just and proper.

### THE RIGHT TO ACCESSIBLE MEDICAL FACILITIES AND SERVICES

7.      The Rehabilitation Act of 1973 was the first law in the United States to seek to eliminate discrimination against, and provide equal access for, people with disabilities.

8.      By the early 1990s, Congressional findings revealed that the Rehab Act alone was not sufficient to protect people with disabilities from discrimination. The ADA was signed into law by George H.W. Bush on July 26, 1990 with the intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

9.      When the ADA's implementing regulations were revised in 2010, a regulatory impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-

accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't Just. (July 3, 2010).[1]

10.    Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

11.    Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

12.    The ADA also defines prohibited discrimination to include the following: (i) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992 (28 C.F.R. § 36.304(a) and 42 U.S.C.

---

[1] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf

§ 12182(b)(2)(A)(iv)); (ii) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1)); and (iii) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2)).

13.     Section 504 of the Rehabilitation Act of 1973 covers medical care providers that receive federal financial assistance, which can include Medicare and Medicaid reimbursements, and requires that medical care providers provide individuals with disabilities full and equal access to their health care services and facilities.

14.     The Rehab Act further requires reasonable modifications to policies, practices, and procedures when necessary to make health services fully available to individuals with disabilities, unless the modification would fundamentally alter the nature of the services.

15.     The Department of Justice ("DOJ"), pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

16.     Although the ADAAG and the ADA's statutory provisions are unambiguous in requiring medical facilities to be readily accessible to individuals with mobility disabilities, in 2001, former Senator Rick Santorum requested technical assistance from the DOJ on behalf of a constituent as to whether the ADA "requires that hospitals and doctors' offices provide adjustable

examining tables for patients with disabilities who cannot use standard-height tables." https://www.justice.gov/crt/americans-disabilities-act-technical-assistance-letters (last accessed August 12, 2019).

17.     In response, the DOJ stated, in part: "Under the policy modification standard, entities subject to the ADA are required to make reasonable modifications in their policies, practices, and procedures if necessary to afford a person with a disability an equal opportunity to participate in the services, facilities, or activities that the entity provides…. Under the barrier removal standard of title III of the ADA, which applies to hospitals and doctors' offices that are public accommodations, a standard-height, nonadjustable examining table constitutes an architectural barrier to persons with certain mobility impairments. Therefore, an adjustable table must be provided if it is readily achievable to do so…" *Id.*

18.     In 2010, to provide further clarity and guidance for health care providers in how to provide services and facilities that are readily accessible to and usable by individuals with mobility disabilities, the DOJ promulgated a technical assistance publication on the ADA and the Rehab Act's requirements, which provides, in relevant part: "Availability of accessible medical equipment is an important part of providing accessible medical care, and doctors and other providers must ensure that medical equipment is not a barrier to individuals with disabilities… Such equipment includes adjustable-height exam tables and chairs, wheelchair-accessible scales, adjustable-height radiologic equipment… It is essential that a person with a disability receives medical services equal to those received by a person without a disability. For example, if a patient must be lying down to be thoroughly examined, then a person with a disability must also be examined lying down." DOJ, *Access to Medical Care for Individuals with Mobility Disabilities*, at 8 (July 2010) *available at* https://www.ada.gov/medcare_ta.htm (last accessed August 12, 2019).

19.    With respect to examination tables, the DOJ provides, in part: "Traditional fixed-height exam tables and chairs (also called treatment tables or procedure tables) are too high for many people with a mobility disability to use. Individuals with mobility disabilities often need to use an adjustable-height table which, when positioned at a low height, allows them to transfer from a wheelchair. A handle or support rail is often needed along one side of the table for stability during a transfer and during the examination…. An accessible exam table or chair should have at least the following: ability to lower to the height of the wheelchair seat, 17-19 inches, or lower, from the floor; and elements to stabilize and support a person during transfer and while on the table..." *Id.* at 9.

## JURISDICTION AND VENUE

20.    This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and the Rehab Act.

21.    Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

22.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

23.    Plaintiff Ronald J. Migyanko is and, at all times relevant hereto, was a resident of Pittsburgh, Pennsylvania.

24.    Mr. Migyanko, as a result of an accident, has a mobility disability, and uses a wheelchair for mobility. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*,

and the Rehab Act, 29 U.S.C. § 705(20), and the regulations implementing the Rehab Act set forth at 28 C.F.R. §§ 41 *et seq.*

25.     Defendant Butler Health System, Inc. is a Pennsylvania non-profit corporation, and is headquartered at 911 East Brady Street, Butler, PA 16001.

26.     BHS does business as BHS Dermatology Associates, and operates multiple facilities through BHS Dermatology Associates that offer dermatology-related services.

27.     The BHS Dermatology Associates' facility at issue in this matter is located at 300 Northpointe Circle, Suite 104, Seven Fields, PA 16046.

28.     BHS is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

29.     Plaintiff is a patient of BHS and recently, in the spring of 2019, visited a dermatologist specialist at the BHS Dermatology Associates' facility located at 300 Northpointe Circle, Suite 104, Seven Fields, PA 16046 (the "BHS Dermatology Facility").

30.     During his visit for medical care at the BHS Dermatology Facility, Plaintiff was unable to transfer to an examination table on his own because there are no accessible examination tables and he was wary of the risk of injury from transferring from his wheelchair to an inaccessible examination table. Instead, Plaintiff was examined while he remained seated in his wheelchair and was otherwise examined without the benefit of utilizing an examination table.

31.     On information and belief, the BHS Dermatology Facility does not have accessible examination tables in compliance with the requirements of the ADA and the Rehab Act. Instead, BHS relies upon a policy and practice of examining patients in their wheelchairs or performing a transfer procedure to lift and place patients who use wheelchairs or scooters onto inaccessible examination tables.

32.    There are primarily two types of procedures to transfer a patient to and from medical equipment such as examination tables, chairs, and beds. One method involves the use of specialized equipment, such as a floor or ceiling-mounted lift, which uses a sling positioned under the patient so that the patient can be lifted and transferred. More commonly, patients are transferred by staff members who grasp the patient underneath the armpits and by the ankles to physically transfer the patient.

33.    Plaintiff is wary of the potential danger of the transfer procedures, and they remove his sense of dignity, feelings of safety, and personal autonomy. And in cases where Plaintiff is examined only in his wheelchair, a denial of his right to receive medical services equal to those received by persons without disabilities. The lack of an accessible examination table causes Plaintiff to experience anxiety and apprehension about whether he will have to undergo a dangerous transfer procedure and whether he is receiving adequate and equal medical care when he is examined in his wheelchair.

34.    Although Plaintiff intends to continue visiting the BHS Dermatology Facility in the future for medical care, Plaintiff has been and is actively deterred from returning because of the inaccessible conditions that exist there and the policies and procedures employed by BHS that led to such conditions.

35.    As a result of Defendant's non-compliance with the ADA and the Rehab Act, Plaintiff's ability to access and safely use Defendant's services and facilities has been significantly impeded.

36.    Plaintiff is and will be deterred from returning to and fully and safely accessing the BHS Dermatology Facility so long as it remains non-compliant, and so long as Defendant

continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at the BHS Dermatology Facility.

37.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of his rights under the ADA and the Rehab Act.

38.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendant, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

39.     Defendant's access violations at the BHS Dermatology Facility demonstrate that Defendant employs policies and practices that fail to design, construct and alter its facilities so that they are readily accessible and usable.

40.     Absent a change in Defendant's corporate policies and practices, access barriers are likely to persist and/or reoccur in the BHS Dermatology Facility even after they have been remediated.

41.     Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at the BHS Dermatology Facility and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility at the BHS Dermatology Facility.

## **CLASS ALLEGATIONS**

42.     Plaintiff brings this class action, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of himself and the following class:  all wheelchair or electric scooter users or other individuals who require the use of an accessible examination table, who have attempted, or will attempt, to utilize the services and facilities at the BHS Dermatology Facility.

43.    <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

44.    <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

45.    <u>Common Questions of Fact and Law</u>:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's policies and procedures and its failure to make its facilities fully accessible and independently usable as above described. The questions of law and fact that are common to the class include, but are not limited to:

a.   Whether BHS is a public accommodation under the ADA;

b.   Whether BHS receives federal financial assistance so as to render BHS subject to the Rehab Act;

c.   Whether the class has been denied equal access to the BHS Dermatology Facility in violation of the equal access provisions of the ADA and the Rehab Act;

d.   Whether BHS has performed all readily achievable barrier removal; and,

e.   Whether BHS has made reasonable modifications to its policies, practices, and procedures when such modifications are required to provide the class equal access to the BHS Dermatology Facility and the services provided there.

46.    <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

47.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSES OF ACTION

### Violations of the ADA (42 U.S.C. §§ 12181, *et seq.*)

48.    Plaintiff incorporates by reference each and every allegation contained in the previous paragraphs.

49.    Plaintiff brings this claim individually and on behalf of the defined putative class of individuals similarly situated.

50.    Plaintiff is an individual with a mobility disability who uses a wheelchair for mobility. Plaintiff, accordingly, is an individual with a disability pursuant to the ADA, in that Plaintiff suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.105.

51.    Defendant is a public accommodation under the ADA. 42 U.S.C. § 12181(7).

## Failure to Provide an Accessible Facility

52.    The ADA prohibits designing and constructing facilities for first occupancy after January 16, 1993 that are not readily accessible to, and independently usable by, individuals with disabilities when it is structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

53.    The ADA also requires that facilities that are altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

54.    Defendant has failed to make the BHS Dermatology Facility readily accessible to individuals with disabilities to the maximum extent feasible in violation of the ADA.

55.    Defendant has discriminated against Plaintiff and continues to discriminate against similarly situated persons by maintaining and operating the BHS Dermatology Facility in a non-compliant state that violates the ADA.

56.    Defendant's failure to provide accessible examination equipment precludes individuals with mobility disabilities who use wheelchairs or scooters, or who otherwise require access to accessible medical equipment, from equal access to Defendant's services and facilities.

## Failure to Remove Architectural Barriers

57.    The ADA prohibits failing to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

58.    Defendant has the financial resources to remove the architectural barriers at issue – namely, the inaccessible examination equipment – and such removal is and was readily achievable for Defendant.

59.    Defendant has possessed sufficient control and authority to remove the architectural barriers at the BHS Dermatology Facility and to modify its examination equipment to comply with the ADA's requirements, but Defendant has not removed such impediments and has not modified its medical equipment. Instead, Defendant has intentionally maintained the BHS Dermatology Facility to be inaccessible and has refrained from making alterations to make the BHS Dermatology Facility accessible to individuals with mobility disabilities who use wheelchairs or scooters or who otherwise require access to accessible examination equipment.

### Denial of "Full and Equal" Enjoyment and Use

60.    Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

61.    Defendant discriminated and continues to discriminate against Plaintiff and others similarly situated by denying "full and equal" enjoyment and use of the goods, services, facilities, privileges, advantages, and accommodations of the BHS Dermatology Facility during Plaintiff's visits and each incidence of deterrence.

### Failure to Modify Existing Policies, Practices, and Procedures

62.    By failing to provide accessible examination equipment, namely the inaccessible examination tables, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination by failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to Plaintiff and those similarly situated.

63.     Defendant has failed to ensure that individuals with mobility disabilities who use wheelchairs or scooters or who otherwise require access to accessible examination equipment receive and are afforded medical services and facilities equal to those received by and afforded to individuals without disabilities.

64.     Defendant's policies, practices, and procedures have failed to ensure Plaintiff and those similarly situated are afforded equal access to its services and facilities.

65.     Defendant has further failed to create, implement, and maintain policies, practices, and procedures that comply with ADA barrier removal requirements and building design regulations and standards.

66.     A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of Defendant's services, facilities, privileges, advantages, and accommodations.

67.     Defendant's ongoing and continuing violations of the ADA have caused, and, in the absence of an injunction, will continue to cause harm to Plaintiff and those similarly situated.

## Violations of the Rehab Act (29 U.S.C. § 701 *et seq.*)

68.     Plaintiff incorporates by reference each and every allegation contained in the previous paragraphs.

69.     Plaintiff is an individual with a disability pursuant to the Rehab Act, in that Plaintiff suffers a physical impairment substantially limiting one or more major life activities. 29 U.S.C. § 705(20); 28 C.F.R. § 41.32.

70.     Defendant receives federal monies and financial assistance, including but not limited to Medicare and Medicaid reimbursements, and is therefore subject to the Rehab Act.

71.     Defendant has, solely by reason of their disabilities, excluded Plaintiff and persons similarly situated from equal participation in the services, programs, and activities provided by Defendant.

72.     Defendant has denied Plaintiff and persons similarly situated, solely by reason of their disabilities, the benefits of the services, programs, and activities provided by Defendant.

73.      Defendant has discriminated against Plaintiff and persons similarly situated by failing to remove architectural barriers, namely the inaccessible examination equipment, which deny persons with disabilities equal access to Defendant's services and facilities.

74.     Defendant has failed to make reasonable modifications to policies, practices, and procedures necessary to make health care services fully available to Plaintiff and those similarly situated.

75.     Defendant has failed to provide reasonable access to the services, programs, and activities provided by Defendant in violation of the Rehab Act.

76.     Defendant's ongoing and continuing violations of the Rehab Act have caused, and, in the absence of an injunction, will continue to cause harm to Plaintiff and those similarly situated.

77.     Pursuant to the remedies, procedures and rights set forth in the Rehab Act, the ADA, and their respective implementing regulations, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a.      A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA and Section 504 of the Rehab Act described above, and those Acts' respective relevant implementing regulations, in that Defendant's facilities and services, as

described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or scooters or otherwise require access to accessible examination tables;

b.    A permanent injunction which directs Defendant to: (i) take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the ADA and the Rehab Act's requirements, so that Defendant's facilities and services are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters or otherwise require access to accessible examination tables; (ii) that Defendant changes its policies and practices to prevent and to ensure that its facilities and services are accessible to individuals who use wheelchairs and scooters and who may otherwise require access to accessible examination tables; and (iii) that Plaintiff shall monitor BHS to ensure that the injunctive relief ordered above remains in place.

c.    An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing his counsel as class counsel;

d.    Payment of costs of suit;

e.    Payment of reasonable attorneys' fees; and,

f.    The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated:  August 12, 2019

Respectfully Submitted,

By: /s/ *R. Bruce Carlson*
R. Bruce Carlson
Kelly K. Iverson
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
Fax: 412-231-0246
bcarlson@carlsonlynch.com
kiverson@carlsonlynch.com

*Counsel for Plaintiff*